UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TRACEY P., RIC Z., RICHARD A.,
GERARD O., and RENAISSANCE
MANOR, INC., a Florida not-for-profit
corporation,**

    **Plaintiffs,**

v.                                                                                                  Case No. 8:05-CV-927-T-27EAJ

**SARASOTA COUNTY, a political
subdivision of the State of Florida, and
JOSEPH and MARIA SERNA,**

    **Defendants.**

_____/

## ORDER

Before the court are Defendant Sarasota County's **Motion to Compel Independent Physical and Mental Examinations** (Dkt. 57), filed on June 7, 2006, and Plaintiffs' **Response in Opposition** (Dkt. 59), filed on June 13, 2006.

Defendant Sarasota County (hereinafter "Defendant" or "Sarasota County") requests an order requiring each individual Plaintiff to submit to an independent physical and mental examination conducted by James R. Edgar, M.D., P.A. ("Dr. Edgar") on June 22, 2006 and June 23, 2006.[1] Federal Rule of Civil Procedure 35(a) states, in relevant part:

> When the mental or physical condition . . . of a party . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner . . . . The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner,

---

[1] The discovery period is set to end on July 14, 2006. (Dkt. 55).

> conditions, and scope of the examination and the person or persons by whom it is to be made.

Fed.R.Civ.P. 35(a) ("Rule 35").  The "in controversy" and "good cause" requirements of Rule 35 "are not met by mere conclusory allegations of the pleadings - nor by mere relevance to the case - but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination."  Schlagenhauf v. Holder, 379 U.S. 104, 118 (1964).

**A.      Physical Examination**

Defendant Sarasota County argues that the physical condition of each individual Plaintiff is in controversy based on Defendant's affirmative defense that the individual Plaintiffs are not qualified to bring suit under the Fair Housing Act ("FHA") or the Americans with Disabilities Act ("ADA").  As part of this defense, Defendant asserts that the individual Plaintiffs are excepted from the protection of the FHA and ADA because either: their tenancy would be a direct threat to the health and safety of others or would result in substantial physical damage to others' property, 42 U.S.C. § 3604(f)(9), they do not have a physical or mental impairment which substantially limits one or more major life activities, 42 U.S.C. § 3602(h), or they are currently illegally using or addicted to a controlled substance, 42 U.S.C. §§ 3602(h), 12210.  (Dkt. 57 at 5).  Defendant states that it will be prevented from presenting these affirmative defenses without the physical and mental examinations of the individual Plaintiffs.  Defendant maintains that the scope of the examinations will be limited to the individual Plaintiffs' physical and mental impairments, addictions to controlled substances and alcohol, current illegal use of controlled substances, and mental and emotional damages.

The individual Plaintiffs argue that they do not allege any physical injury resulting from

Defendants' actions, therefore their physical conditions are not at issue. (Dkt. 59 at 4). Plaintiffs do not address Defendant Sarasota County's argument that affirmative defenses regarding the application of the FHA or ADA place their physical condition in controversy.

In this case, the individual Plaintiffs have not placed their physical conditions in controversy. Plaintiffs do not allege that they have been physically injured by Defendants. Neither do Plaintiffs' answers to interrogatories implicate Plaintiffs' physical condition.[2] Although Plaintiffs do assert a claim and seek damages under the ADA, Defendant has not provided legal authority for the proposition that bringing an ADA claim automatically subjects a plaintiff to a physical examination.[3] As Defendant does not provide legal authority for the proposition that an affirmative defense is sufficient to place a plaintiff's physical condition "in controversy" for purposes of Rule 35, and the individual Plaintiffs have not placed their physical conditions in controversy in the complaint, Defendant has not shown good cause to order a physical examination of Plaintiffs under Rule 35.

**B.     Mental Examination**

Defendant Sarasota County asserts that the court should order mental examinations because the individual Plaintiffs have placed their mental condition in controversy. Plaintiffs argue that their

---

[2]The individual Plaintiffs' responses to interrogatories do include statements regarding Plaintiffs' mental status. For example, Plaintiff Tracey P.'s responses to interrogatories include references to her depression, bi-polar disorder, limitations in the ability to care for herself or maintain life skills, anxiety and fear, and other emotional harms. See Dkt. 57, Exhibit A.

[3]In the case on which Defendant does rely, Ali v. Wang Laboratories, Inc., the plaintiff alleged a work-related injury, was terminated, and sued his employer under the ADA. 162 F.R.D. at 167. In answers to interrogatories, the plaintiff in Ali indicated that a prior automobile accident caused chronic cervical pain syndrome, chronic severe neck pains and headaches, chest pains, and muscular pains and spasms in his neck and shoulder area. Id. at 168. In that case, the plaintiff's past and current physical condition was primary to the plaintiff's claims. This case is factually distinguishable, as the individual Plaintiffs here do not assert that they have received any physical injury caused by Defendant, or that any physical injury is central to their current claims.

allegations of emotional damages do not provide good cause for a mental examination, that their disabilities are established by discovery previously furnished to Defendant, and that Plaintiffs have not sought to introduce expert witness testimony for their damages claims.

A mental examination is warranted when one or more of the following factors are present: (1) a tort claim is asserted for intentional or negligent infliction of emotional distress; (2) allegations of a specific mental or psychiatric injury or disorder is made; (3) a claim of unusually severe emotional distress is made; (4) plaintiff intends to offer expert testimony in support of a claim for emotional distress damages; and/or (5) plaintiff concedes that her mental condition is in controversy within the meaning of Rule 35. Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 554 (N.D. Ga. 2001) (citations omitted).[4]

A mere allegation of damages for "emotional distress" does not automatically place a plaintiff's mental condition in controversy for purposes of Rule 35. Ali v. Wang Laboratories, Inc., 162 F.R.D. 165, 167 (M.D. Fla. 1995); Robinson v. Jacksonville Shipyards, Inc., 118 F.R.D. 525, 528-31 (M.D. Fla. 1988). Plaintiffs do not allege a claim for intentional infliction of emotional distress. The individual Plaintiffs have, however, discussed the extent of their emotional injuries in responses to interrogatories. See Dkt. 57, Exhibits A-D. In these responses, Plaintiff Tracey P. states that she has depression and bi-polar disorder and suffered "tremendous emotional harm" at the hands of Defendants, including "severe anxiety and fear" from the threats of losing her home, public humiliation, police harassment, losing rehabilitative services and suffering a relapse. See id., Exhibit A at 5. Plaintiffs Ric Z., Richard A., and Gerard O. each assert that Defendants have caused

---

[4] Even where these five factors have not been expressly recognized, most cases allowing mental examinations involve a claim for emotional distress or an allegation of ongoing severe mental injury. See Stevenson, 201 F.R.D. at 554 (citations and quotations omitted).

them "tremendous emotional harm" and "severe anxiety and fear." Id., Exhibit B at 6, Exhibit C at 6, Exhibit D at 6. These responses present more than a simple allegation of emotional distress and place the individual Plaintiffs' mental condition in controversy for purposes of Rule 35. See, e.g., Ali, 162 F.R.D. at 167 (plaintiff's responses to interrogatories were sufficient to place plaintiff's mental condition in controversy).

The undersigned finds that the individual Plaintiffs have placed their mental conditions in controversy. The emotional injuries the individual Plaintiffs claim are ostensibly ongoing, as the threats from Defendant which are allegedly causing these injuries are continuous. Cf. Ali, 162 F.R.D. at 168 (allegations of continuing "severe and permanent" psychological harm placed mental condition in controversy). In addition, Plaintiffs' assertions of emotional harm are essentially allegations of a specific psychiatric injury by Defendants, the imposition of a particular fear of homelessness and its consequences, including relapse. Therefore under Rule 35, Defendant Sarasota County should have the opportunity to evaluate Plaintiffs' mental conditions in light of Plaintiffs' claims, an opportunity Defendant has not previously had.

**C.     Suitability of Proposed Examiner**

Plaintiffs object to the Defendant's selection of Dr. Edgar because his resume does not indicate "a familiarity with people in recovery." (Dkt. 59 at 9). From a review of Dr. Edgar's curriculum vitae, the undersigned notes that he is an Evaluator and Treatment Provider for the Physicians' Recovery Network with the Impaired Practitioners Program of Florida. (Dkt. 57, Exhibit E at 4). In this position, Dr. Edgar deals with matters relating to professionals who are impaired "due to alcohol or drug abuse or primary psychiatric disorders." Id. Dr. Edgar has also made presentations on this topic to Treatment Providers for the Impaired and the Southern

Psychiatric Society. Id. at 5. In March 2002, Dr. Edgar was named in Woodward White's The Best Doctors in America and has maintained a full or part-time practice of Psychiatry and Psychoanalysis for over thirty years. Id. at 4-5. The undersigned finds Dr. Edgar qualified to conduct a mental examination of the individual Plaintiffs for the purposes authorized in this order.

**D.     Scope, Location, and Conditions of Examinations**

Plaintiffs request that the examinations be taken upon various conditions, including being accompanied by their attorney, physician, or other representative, the presence of a videographer or certified court reporter, having no other individuals present besides those listed above, the making an audiotape of the examination, identifying all persons assisting the physician, limiting the scope of the examination to those conditions of Plaintiffs that are in controversy, limiting Plaintiffs' oral history provided to the physician, limiting the total time of the examination and all testing to one hour, and the provision to Plaintiffs of a copy of all reports and writings generated, among other conditions.

The mental examination of each individual Plaintiff is limited to examining the Plaintiff's current and prior mental state from the relevant time period of activities giving rise to this lawsuit, i.e., spring of 2004 through the present. The examination shall be limited to the nature and circumstances of each Plaintiff's mental impairment, current illegal use of controlled substances, emotional distress based on the acts and omissions of Defendant, and to Plaintiff's current mental state. No physical examination shall be permitted. Plaintiffs are not required to sign consent forms before the examination proceeds, but may be required to fill out questionnaires within the scope of the topics outlined above for the relevant time period.

The examination shall be conducted by Dr. Edgar at his office on June 22, 2006 and June 23,

2006 at a time mutually agreeable to the parties, and shall last no longer than four hours for each Plaintiff, inclusive of the examination and all testing procedures. Although Plaintiffs seek to limit the examination to one hour, such a brief period is not adequate. Considering the circumstances of this case, there is no particular need for Plaintiffs' counsel, physician, or other representative to be present at the examination. However, a court reporter may be present, at Plaintiffs' expense, or in the alternative, at Plaintiffs' option Plaintiffs may make an audio recording of the examination. Defendant shall be afforded the opportunity to obtain a copy of any resulting transcript or audiotape.

Defendant Sarasota County shall provide Dr. Edgar with a copy of this order and with the relevant portions of Plaintiffs' complaint and responses to interrogatories. Within a reasonable time period following the examination, Defendant shall provide Plaintiffs with a copy of the resulting report or reports, and all such reports shall be kept confidential by the parties absent further court order. All other limitations on the examination suggested by Plaintiffs are denied.

Upon consideration, it is **ORDERED and ADJUDGED**:

(1) Defendant Sarasota County's **Motion to Compel Independent Physical and Mental Examinations** (Dkt. 57) is **GRANTED** to the extent that Plaintiffs Tracey P., Ric Z., Richard A., and Gerard O. are ordered to submit to a mental evaluation by Dr. Edgar, subject to the limitations and time constraints above. The motion is denied in all other respects.

**DONE AND ORDERED** in Tampa, Florida on this 16th day of June, 2006.

*/s/ Elizabeth A. Jenkins*
ELIZABETH A JENKINS
United States Magistrate Judge