UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY P., RIC Z., RICHARD A., GERARD O.,
and RENAISSANCE MANOR, INC.,

        Plaintiffs,

vs.                                           Case No. 8:05-CV-927-T-27EAJ

SARASOTA COUNTY,
JOSEPH and MARIA SERNA,

        Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Sarasota County's Motion for Partial Summary Judgment (Dkts. 83; 169) and Plaintiffs' responses.[1] (Dkts. 104, 170). Upon consideration, the County's motion is **GRANTED** in part and **DENIED** in part.

Plaintiffs Renaissance Manor, Inc., Tracey P., Ric Z., Richard A., and Gerard O. initiated this action against Sarasota County alleging violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132 *et seq.*[2] Plaintiffs claim that the County acted in a discriminatory manner when it determined that six adjacent homes owned by the Renaissance Manor and occupied by individuals recovering from mental illness and substance abuse violated the County's zoning ordinances. The County moves for

---

[1] Renaissance Manor, Inc., Tracey P., Richard A., and Gerard O. filed a collective response (Dkt. 104) and Ric Z. filed an individual response (Dkt. 170).

[2] This Order has no affect on Plaintiffs' claims against Joseph and Maria Serna, the other named defendants in this action.

summary judgment on Counts I and II of Plaintiffs' Amended Complaint.

## Background Facts

Renaissance Manor, Inc. is a not-for-profit Florida organization that provides housing to individuals who are mentally ill, homeless or recovering from substance abuse. (Dkt. 112, Ex. 1, Eller Aff., ¶ 1). Renaissance Manor operates the Tammi House, which consists of six single-family dwellings located on Sevilla Street in a residential neighborhood in Sarasota County. The Tammi House provides housing for individuals recovering from mental illness and substance abuse and supports its residents' recovery through Alcoholic Anonymous, Narcotics Anonymous, and 12-step meetings. (Dkt. 112, Ex. 1, Eller Aff., ¶¶ 4, 5). Tracey P., Ric Z., Richard A., and Gerard O. are individuals in recovery from alcohol or drug dependency and who were residents of the Tammi House at the time this lawsuit was filed. (Dkt. 112, Ex. 1, Eller Aff., ¶ 3).

The County's zoning ordinance limits the number of unrelated persons who can live together in a residential single family district through the definition of "family" in the County zoning code. With respect to individuals with disabilities who behave as a family, up to six such individuals can reside in a single home located in a residential single family district. "Family" is defined in the County's zoning ordinance as including six unrelated "individuals protected by the Fair Housing Act." (Dkt. 83. Ex. A, § 10.2.1). If, however, the individuals receive certain services such that the facility should be licensed by the Florida Department of Children and Family Services, the County's zoning code classifies the residence as a "Community Residential Home."[3] (Dkt. 83, Ex. A, §

---

[3] "Community Residential Home" is defined as a "dwelling unit licensed to serve clients of the Department of Children and Family services, which provides a living environment for up to 14 unrelated residents who operate at the functional equivalent of a family, including such supervision and care by supportive staff as may be necessary to meet the physical emotional, and social needs of the residents." (Dkt. 83, Ex. A, § 10.2.1).

2

10.2.1). The County permits Community Residential Homes to be located in a residential single family district with the restriction that such homes "not be located within a radius of 1,000 feet of another existing such home with six or fewer residents."[4] (Dkt. 83, Ex. A, § 5.3.2(b)(1).

From 1996 through June 2004, the County took the position that the residents of the Tammi House, then four single family houses, operated as a "family" of up to six unrelated individuals with disabilities. In September, 2003, the County Zoning Administrator issued a zoning determination confirming that up to six unrelated individuals with disabilities constituted a "family" and could occupy each home at the Tammi House under the Sarasota County zoning code. (Dkt. 112, Ex. 1, Eller Aff., ¶ 7).

In November 2003, Renaissance Manor purchased the Tammi House and two vacant parcels of land on Sevilla Street for the purpose of expanding the housing opportunities for individuals recovering from substance abuse and mental illness. (Dkt. 112, Ex. 1, Eller Aff., ¶ 8). Renaissance Manor obtained building permits authorizing construction of two single family homes. (Dkt. 112, Ex. 1, Eller Aff., ¶ 8). After the additional single-family homes were built, the County issued certificates of occupancy for the homes. (Dkt. 112, Ex. 1, Eller Aff., ¶ 7).

In July 2004, the County revisited the Tammi House's operation and concluded that the homes and residents "meet the definition of residents in a [C]ommunity [R]esidential [H]ome" and that the "structures on Sevilla Street are and will be operated as Community Residential Homes."

---

[4] The County's 1,000-foot spacing requirement is consistent with Florida law, Florida Stat. § 419.001, which in relevant part provides:
> Homes of six or fewer residents which otherwise meet the definition of community residential home shall be allowed in single-family or multifamily zoning without approval by the local government, provided that such homes shall not be located within a radius of 1,000 feet of another existing such home with six or fewer residents.

Fla. Stat., § 419.001(2).

(Dkt. 112, Ex. 8). On July 21, 2004, the County notified Renaissance Manor that the County considered the Tammi House a Community Residential Home and that the homes were in violation of the 1,000-foot spacing requirement. (Dkt. 112, Ex. 9). The County notified Renaissance Manor that one of the homes could continue to operate as a Community Residential Home, but that the other five homes must cease operations within ninety days from the date of the letter. *Id.* Renaissance Manor appealed the County's decision to the County Board of Zoning Appeals. After conducting a hearing on Renaissance Manor's appeal, the County Board of Zoning Appeals affirmed the County's decision to classify the Tammi House as a Community Residential Home and its finding that the Tammi House is in violation of the 1,000-foot spacing requirement.[5] (Dkt. 112, Ex. 10; Dkt. 19, ¶ 48). Plaintiffs initiated this action against the County in May 2005. (Dkt. 1).

## Applicable Standard

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and

---

[5] The hearing was conducted on October 4, 2004. There is no record evidence establishing the exact date the Board affirmed the County's decision. In his response to the County's motion for summary judgment, Ric Z. represents that the Board affirmed the County's decision in October 2004. (Dkt. 170, p. 8).

admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-4 (1986). Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## Discussion

### Facial Validity of the County's Zoning Ordinance

The County spends the vast majority of its memorandum of law in support of its motion for summary judgment defending the relevant zoning ordinance as facially valid. In response to the County's motion for summary judgment, Plaintiffs represent that they "do not launch a *facial* challenge to the zoning ordinance; rather, the Plaintiffs, in their Complaint, allege that the County's conduct as applied in this case, which includes among other actions, its enforcement of the 1000-foot [spacing] rule to Tammi House, is unlawful under the Fair Housing Act." (Dkt. 104, p. 2). The County does not seek summary judgment on Plaintiffs' claim that the County's application of the zoning ordinance to the Tammi House is discriminatory. (Dkt. 83, p. 3, n. 1). Accordingly, the facial validity of the zoning ordinance is not in question and in this regard, the County's motion for summary judgment is denied.

### Ric Z.'s Claims

The County contends summary judgment on Ric Z.'s individual claims is appropriate because Ric Z. was addicted to and used controlled substances during the relevant time period and in turn, lacks standing to bring suit under the FHA and ADA. The FHA and Title II of the ADA, and the regulations promulgated thereunder, prohibit housing discrimination by governmental entities against handicapped persons or persons with disabilities. *See* 42 U.S.C. § 3604(f)(1) and (f)(3)(B) and 42 U.S.C. § 12132. The legal analyses under both statutes are very similar. *See Schwarz v. City of*

*Treasure Island*, 2006 WL 2521399, *14 (M.D. Fla. 2006) ("The analysis under the ADA and the Rehabilitation Act is very similar to that under the FHA.").

Pursuant to the FHA, a plaintiff must establish that the defendant was motivated by an intent to discriminate against the handicapped. "Handicap" is defined as (1) a person with "a physical or mental impairment which substantially limits one or more of such person's major life activities," (2) a person with "a record of having such an impairment" or (3) a person who is "being regarded as having such an impairment." 42 U.S.C. § 3602(h). The term "handicap" "does not include current, illegal use of or addiction to a controlled substance." *Id.* The benchmark date used to determine whether an individual is currently using drugs is the date of the alleged discriminatory act. *See Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 609 (D. N.J. 2000).

Similarly, a plaintiff bringing a claim under the ADA must establish that he is a "qualified individual with a disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001). The definitions under the two acts, one of "disability" and the other "handicap," are "almost verbatim." *See Bragdon v. Abbot*, 524 U.S. 624, 631 (1998). The term "'individual with a disability' does not include an individual who is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12210(a). However, the ADA provides a "safe harbor" for individuals who are "participating in a supervised rehabilitation program and [] no longer engaging in such [drug] use." 42 U.S.C. § 12210(b)(2). While Congress did not define the term "currently engaging in the illegal use of drugs," the federal regulations provide:

> [T]he term "currently engaging" is not intended to be limited to the use of drugs on the day of, or within a matter of days or weeks before, the employment action in question. Rather the provision is intended to apply to the illegal use of drugs that has

> occurred recently enough to indicate that the individual is actively engaged in such conduct.[6]

*Johnson v. City of Columbus*, 2001 WL 605040 *4 (S. D. Ohio 2000) (quoting 29 C.F.R. § 1630.3). The existence of a disability must be examined on a case-by-case basis.[7] *See Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999).

Here, the Court presumes, based on the argument of counsel, that the relevant alleged act of discrimination with respect to Rick Z's individual claims took place in October 2004, when the Board affirmed the County's decision to classify the Tammi House as a Community Residential Home. The undisputed evidence establishes that Ric Z. used crack cocaine and several other illegal substances in the days and weeks before entering the Tammi House in October 2004. Moreover, after residing at the Tammi House for approximately thirty days, he abused drugs again. (Dkt. 169, Ex. G, pp. 40, 41, 45-46). He resided at the Tammi House again from January 2005 through September 2005. During his January - September 2005 stay, he smoked crack cocaine in the Tammi House on three occasions. (Dkt. 169, Ex. G, p. 42, 89). Later, in November 2005, Ric Z. re-entered the Tammi House, but suffered another relapse in May 2006. (Dkt. 169, Ex. G, p. 89).

---

[6] While the regulation discusses the term "currently engaging" in the context of an employment action, the regulation is persuasive evidence that Congress did not intend a narrow definition of the term and that an individual's drug use that has occurred recently enough to indicate that the individual is not in recovery, but rather actively engaging in drug abuse, should not qualify as "disabled."

[7] This Court is not persuaded by Ric Z.'s contention that § 12210(a) does not apply to him because the County did not discriminate against him on the basis of his drug use. Plaintiffs allege in the amended complaint that the County discriminated against them based on their status as substance abusers and due to the community's fear that they would abuse drugs again. Section 12210(a), therefore, applies to Plaintiffs' ADA claims. While the County may not have decided to reclassify the Tammi House because of Ric Z.'s individual drug use, Plaintiffs allege that the County discriminated against them because of the fears and prejudices held against individuals recovering from substance abuse, which reasonably includes the commonly held fear that individuals recovering from drug use will relapse and abuse drugs or alcohol again. (Dkt. 170, pp. 12-13; Dkt. 112, Ex. 10, Transcript from October 4, 2004 Appeal Hearing, p. 75, "Drug addicts are repeaters. They go back.").

The evidence, therefore, establishes that Ric Z.'s drug use immediately prior to entering the Tammi House in October 2004 and his drug use shortly thereafter was reasonably contemporaneous with the County's alleged act of discrimination and recent enough to the alleged act of discrimination to indicate that his continued use of drugs was a legitimate concern and an ongoing problem. *See New Directions Treatment Services v. City of Reading*, 415 F. Supp. 2d 501, 513-14 (E.D. Pa. 2005) ("Plaintiffs may not have used illegal drugs 'recently enough so that continuing use is a real and ongoing problem.'") (citing *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1188 (9th Cir. 2001)); *compare Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 609 (D. N.J. 2000) (holding plaintiff was not currently using drugs because there was "no evidence which link[ed] [plaintiff] to illegal drug use reasonably contemporaneous with the alleged incidents of discrimination").

"Congress intended to recognize that addiction is a disease from which, through rehabilitation efforts, a person may recover, and that an individual who makes the effort to recover should not be subject to housing discrimination based on society's accumulated fears and prejudices associated with drug addiction." *United States v. Southern Management Corp.*, 955 F.2d 914, 923 (4th Cir. 1992). The House Report submitted with the proposed amendments to the FHA establishes that "[t]he Committee d[id] not intend to exclude individuals who have recovered from an addition [sic] or are participating in a treatment program or a self-help group such as Narcotics Anonymous." *Southern Management*, 955 F.2d at 921 (quoting H.R. Rep. No. 100-71, reprinted in 1988 U.S.C.C.A.N. 2173, 2183) (emphasis added). Rather, "individuals who have a record of drug use or addiction but who do not currently use illegal drugs would continue to be protected if they fall under the definition of handicap." *Id.*

Although Rick Z. entered the Tammi House seeking treatment in October 2004, he had not abstained from drug use for any appreciable period of time before taking up residence at the Tammi House. Moreover, he continued to abuse drugs thereafter. While the FHA and ADA protects individuals who have recovered from addiction or are "participating in a supervised rehabilitation program and [are] no longer engaging in such [drug] use," the evidence establishes that Ric Z. falls into neither category. Notwithstanding that recovering addicts, free of current drug use, are protected from discriminatory acts because of their disability, one who, like Ric Z., continues to use illegal drugs loses the protections granted by Congress. *See Zenor v. El Paso Healthcare System, Limited*, 176 F.3d 847, 857 (5th Cir. 1999) ("a short period of abstinence [five weeks], particularly following such a severe drug problem, does not remove from the employer's mind a reasonable belief that the drug use remains a problem; holding "mere fact that an employee has entered a rehabilitation program does not automatically bring that employee within the safe harbor's protection. . . . the safe harbor provision applies only to individuals who have been drug-free for a significant period of time").[8]

For the same reasons, Ric Z.'s argument that he qualifies as a disabled or handicapped individual because he was "regarded as being disabled" or had a "record of a disability" is not persuasive. An individual is regarded as being disabled where that person: (1) has a physical or mental impairment that does not substantially limit one or more major life activities but that is

---

[8] While *Zenor* was decided in the context of an alleged discriminatory employment action, this Court finds the reasoning instructive. Based on the plain language of the relevant ADA and FHA provisions and a review of the cases interpreting that language, this Court finds that Ric Z.'s brief abstinence from drugs in October 2004 does not qualify him as "handicapped" or a "qualified individual with a disability."

treated by another person as constituting such a limitation; (2) has a physical or mental impairment that substantially limits one or more major life activities only as a result of the attitudes of others toward such impairment; or (3) has none of the impairments defined in paragraph (a) of this definition but is treated by another person as having such an impairment. 24 C.F.R. § 100.201(d).

Ric Z. cannot establish, in light of his contemporaneous drug use, he is protected by the ADA or FHA with respect to the County's zoning determination. To the contrary, the Committee reports indicate that current drug users are not protected and whether a plaintiff alleges that he was discriminated against because he had a record of drug addiction or was perceived as being a drug addict is irrelevant, if he was currently abusing drugs or alcohol. *See Buckley v. Consolidated Edison Co. of New York, Inc.*, 127 F.3d 270, 273 (2nd Cir. 1997) (recognizing that "if drug or alcohol addiction is an impairment under § 12102(2)(A), recovering addicts, *so long as they are not currently using drugs*, will automatically be covered under § 12102(2)(B) for having a *record* of drug addiction") (emphasis added); *see also, Southern Management Corp.*, 955 F.2d at 921 ("individuals who have been perceived as being a drug user or an addict are covered under the definition of handicap if they can demonstrate that they are being regarded as having an impairment *and that they are not currently using an illegal drug*") (emphasis added).

Based upon the undisputed facts, Ric Z. cannot establish that he was "handicapped" or a "qualified individual with a disability" under the FHA and ADA in October 2004 when the County allegedly discriminated against him by reclassifying the Tammi House. His claims therefore, are dismissed. Accordingly, it is

**ORDERED AND ADJUDGED** that Sarasota County's Motion for Partial Summary

Judgment (Dkt. 83) is **GRANTED** in part and **DENIED** in part. Ric Z.'s claims are **DISMISSED**.

In all other regards, the County's motion is **DENIED**.

**DONE AND ORDERED** in chambers this 28th day of March, 2007.

JAMES D. WHITTEMORE
**United States District Court Judge**

Copies to:
Counsel of Record